IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS KING, THADDEUS KAROW, JAMES
PRICE, CRAIG ALAN SUSSEK, and VICTORIANO
HEREDIA, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    v.

STEVEN LANDREMAN, Acting Chairperson and
Commissioner of the Wisconsin Parole Commission;
DANIELLE LACOST, Commissioner of the Wisconsin
Parole Commission; DOUGLAS DRANKIEWICZ,
Commissioner of the Wisconsin Parole Commission;
KEVIN CARR, Secretary-Designee of the Wisconsin
Department of Corrections; and MARK HEISE,
Director of the Bureau of Classification and Movement,
in their official capacities,

                Defendants.

OPINION and ORDER

19-cv-338-jdp

---

      Plaintiffs seek to represent a class of Wisconsin prisoners who committed crimes as minors and are serving life sentences with the possibility of parole. Plaintiffs contend that the standard the state uses for making their parole decisions violates their right to be free from cruel and unusual punishment under the Eighth Amendment, their right to due process under the Fourteenth Amendment, and their right to have a jury determine facts that will increase their mandatory maximum or minimum sentence under the Sixth Amendment. They move for certification of a class under Federal Rule of Civil Procedure 23(b)(2). Dkt. 28.

      Rule 23 includes several requirements, but the basic question is whether "judicial efficiency would be served by allowing [the plaintiffs'] claims to proceed en masse through the medium of a class action rather than through individual litigation." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). It makes sense to

allow this case to proceed as a class because plaintiffs are challenging the standard the state uses in evaluating parole decisions, and they are seeking uniform relief in the form of an injunction and a declaration. Defendants haven't identified any individualized issues that would prevent the court from resolving plaintiffs' claims collectively. So the court will grant plaintiffs' Rule 23 motion.

The court will also direct plaintiffs to show cause why Carlos King, Thaddeus Karow, and Craig Alan Sussek shouldn't be dismissed from the case. It is undisputed that each of those plaintiffs have been released from prison, so it isn't clear how they could benefit from any injunctive or declaratory relief. And plaintiffs aren't seeking monetary damages, so King, Karow, and Sussek's claims appear to be moot.

## ANALYSIS

The requirements for class certification under Rule 23 are well established: (1) the scope of the class and the class claims must be defined, Fed. R. Civ. P. 23(c)(1)(B); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by named plaintiffs who have claims typical of the class, Fed. R. Civ. P. 23(a); (3) class counsel must be adequate, Fed. R. Civ. P. 23(g)(1); and (4) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, plaintiffs ask for certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

## A.  Class claims and class definition

An order certifying a class must include "a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Ross v. RBS Citizens, N.A.,* 667 F.3d 900, 904–05 (7th Cir. 2012). In this case, all of plaintiffs' claims arise out of *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010). In *Graham*, the Court held that the Eighth Amendment prohibits a juvenile offender convicted of a nonhomicide crime from being sentenced to life in prison without the possibility of parole. The Court stated that juvenile offenders must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 at 75. In *Miller*, the Court extended the holding in *Graham* to juveniles convicted of homicide. In *Montgomery*, the Court held that *Miller* has retroactive effect in cases on collateral state review.

Plaintiffs are asking the court to extend *Graham, Miller,* and *Montgomery* to the parole context. Plaintiffs contend that defendants are violating the plaintiffs' constitutional rights under those three cases by applying a parole standard that relies on the amount of time a prisoner has served rather than a prisoner's demonstrated maturity and rehabilitation. Specifically, plaintiffs contend that: (1) defendants are violating the Eighth Amendment by failing to give plaintiffs a meaningful opportunity for release based solely on plaintiffs' demonstrated maturation and rehabilitation; (2) defendants are violating the Due Process Clause by failing to adopt procedures that allows plaintiffs to demonstrate that they are entitled to release based solely on their maturity and rehabilitation; (3) defendants are increasing plaintiffs' mandatory minimum sentence in violation of the Sixth Amendment by denying parole on the ground that plaintiffs haven't served enough time, even after plaintiffs reach their

parole eligibility date; and (4) defendants are increasing plaintiffs' maximum sentence in violation of the Sixth Amendment by implicitly finding that plaintiffs are "incorrigible" when defendants deny parole based on the amount of time served rather plaintiffs' demonstrated maturity and rehabilitation. *See* Dkt. 44, at 5 ("Plaintiffs claim that Wisconsin's parole scheme does not provide for the release of juvenile lifers based solely on demonstrated maturity and rehabilitation—and that the scheme actively inhibits the release of such individuals by giving the Commission unfettered discretion to deny parole using factors with no bearing on maturity or rehabilitation."). The court concludes that plaintiffs have adequately defined the class claims.

The class itself must also be "defined clearly" using "objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Plaintiffs seek to certify the following class: "All persons serving life sentences, or terms of years that exceed life expectancy, for crimes committed when they were children under the age of 18 in the custody of Wisconsin DOC and who are now, or will be, eligible for release under parole supervision."

For the most part, the class is both clearly defined and based on objective criteria. But there is one notable exception: the class definition doesn't explain what qualifies as "terms of years that exceed life expectancy." In their reply brief, plaintiffs' point to a report of the U.S. Sentencing Commission, which states that a "de facto life sentence" is "470 months or longer," which is 39 years and two months.  That's a clear definition and it uses objective criteria, so plaintiffs have satisfied the requirements in Rule 23(c)(1)(B) for defining the class.

## B.  Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific numerical requirement, but "a forty–member class

is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Plaintiffs acknowledge that they don't know the exact number of Wisconsin prisoners who fall within the class. But they estimate that there are approximately 120 class members based on a response to an open records request that they submitted to the Wisconsin Department of Corrections. *See* Dkt. 45-1. Their open records request closely tracks their class definition, with the exception that the request asked for the names of prisoners serving sentences of 30 or more years rather than 40 or more years. Plaintiffs don't explain the discrepancy, but the response from DOC indicates that the vast majority of prisoners on the list are serving life sentences, so it is reasonable to infer that the list prepared by DOC is only slightly larger than plaintiffs' proposed class.

Although defendants challenge the sufficiency of plaintiffs' evidence, defendants don't cite any evidence to the contrary. Defendants are in the best position to know how many prisoners fall within the class definition, so it is reasonable to infer from defendants' silence that plaintiffs' estimate isn't far off. *See Reilly v. Century Fence Co.*, No. 18-cv-315-jdp, 2020 WL 1166708, at *7 (W.D. Wis. Mar. 11, 2020).

Knowledge of the precise number of class members isn't required: "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). The court concludes that plaintiffs have met that standard.

## C.  Commonality and typicality

Under Rule 23(a)(2), the plaintiffs must show that "there are questions of law or fact common to the class"; under Rule 23(a)(3), they must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." There is significant overlap in the requirements for commonality and typicality under Rule 23(a). *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Both requirements focus on the question whether the court or the factfinder can resolve issues across the class rather than through individualized determinations. *Chicago Teachers Union,* 797 F.3d at 434 (to satisfy commonality requirement, "[t]he claims must depend upon a common contention that is capable of class wide resolution"); *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (to satisfy typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group").

All of plaintiffs' claims are based on the common contention that prisoners who committed crimes as juveniles are entitled under the Eighth Amendment, the Sixth Amendment, and the Due Process Clause to be considered for parole based on their maturity and rehabilitation and not on defendants' view the prisoner hasn't served enough time. This is an ambitious theory that will require a significant extension of current law to succeed. But the court need not consider at this stage whether plaintiffs' contentions are likely to prevail. *See Messner v. Northshore University HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012) ("[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."); *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010) ("Rule 23 allows certification

of classes that are fated to lose as well as classes that are sure to win."). Rather, the important question is whether plaintiffs' claims and the proposed class members' claims rise and fall together. If there are disputed facts on questions related to class certification, plaintiffs have the burden to prove those facts by a preponderance of the evidence. *Messner*, 669 F.3d at 811.

One potential objection to commonality and typicality is that the proposed class is composed of two different sets of proposed class members—those who received life sentences and those who received sentences of more than 470 months. This raises the question whether the court can resolve the claims of both types of class members together, or whether subclasses are needed. *See* Fed. R. Civ. P. 23(c)(5) (allowing for creation of subclasses). Neither side has asked the court to create subclasses, and the court concludes that they aren't necessary. Plaintiffs' theory of the case is not dependent on the precise length of the sentence. Rather, the court understands plaintiffs to be contending that prisoners who committed crimes as juveniles and receive long sentences are entitled to be considered for parole based on their maturity and rehabilitation and not on other factors such as the seriousness of their crime. *See* Dkt. 44, at 6 ("[T]he Constitution entitles juvenile lifers to parole decisions based solely on a determination of maturation and rehabilitation, [so] all class claims can be resolved by a uniform order."). The question whether defendants are applying the correct standard when making parole decisions is an issue that can be decided across the class.

Defendants object on the ground that the decision whether to grant parole is discretionary and based on individualized factors, so the court must determine the validity of each decision on a case-by-case basis. But plaintiffs aren't challenging the decision to deny them parole; they are challenging the validity of the standard used to make parole decisions. There is no dispute that parole decisions for the proposed class members are based on factors

other than the prisoner's demonstrated maturity and rehabilitation. *See* Wis. Admin. Code § PAC 1.06(16) (listing factors to be considered in making parole decisions). Defendants don't concede that they consistently deny parole on the ground that a prisoner hasn't served "enough" time, but one of the factors defendants may consider is whether "[t]he inmate has served sufficient time so that release would not depreciate the seriousness of the offense." *Id.* § PAC 1.06(16)(b). And each of the named plaintiffs alleges that he was denied parole because defendants believed that he needed more "punishment." *See*; Dkt. 31, ¶ 29; Dkt. 32, ¶¶ 16–17, 19; Dkt. 33, ¶¶ 14–18; Dkt. 34, ¶ 15; Dkt. 35, ¶ 15. Defendants cite no evidence to the contrary, so the court finds that plaintiffs have adequately shown at this stage of the case that defendants have a consistent practice of denying parole based on a belief that a prisoner hasn't served enough time, regardless of his demonstrated maturity and rehabilitation. If defendants present evidence at summary judgment undermining the existence of a uniform practice, the court will reevaluate the certification decision. *See Bell v. PNC Bank, Nat. Ass'n,* 800 F.3d 360, 379 (7th Cir. 2015) ("If the district court finds that [the defendant] did not have the alleged unwritten policy, then all of the plaintiffs' claims fail and the class would be decertified.").

Defendants also say that certification isn't appropriate because three of the named plaintiffs have been released since this case was filed, showing that some prisoners *do* have a meaningful opportunity for release, and that it is impossible to decide plaintiffs' claims without considering the individual circumstances of each prisoner. But this argument is again based on an incorrect view that plaintiffs are challenging the substance of defendants' parole decisions. Plaintiffs are not contending that it is impossible to obtain release, only that defendants are applying the wrong standard. Even the wrong standard may produce the correct result in some instances. The release of three plaintiffs may show that they are not adequate representative of

the class, as will be discussed in the next section. But it doesn't defeat plaintiffs' broader challenge to the standard employed by defendants in making parole decisions.

**D. Adequacy of named plaintiffs**

Under Rule 23(a)(4), the named plaintiffs must show that they "will fairly and adequately protect the interests of the class." In other words, the named plaintiffs must show that their claims are not in conflict with the claims of the proposed class and that they have a sufficient interest in the outcome of the case. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

The one conflict that the court sees is that three of five the named plaintiffs—King, Karow, and Sussek—have already been released. Those three plaintiffs no longer have an interest in the case because any relief awarded by this court could not benefit them. This is more than a question of adequacy: it raises the question whether those three plaintiffs should be dismissed from the case on mootness grounds. *See Loertscher v. Anderson*, 893 F.3d 386, 392–93 (7th Cir. 2018) ("In an action seeking injunctive relief, the requirement of a live controversy ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot." (internal quotation marks omitted)). But neither side discusses that issue in their briefs, so the court will give plaintiffs an opportunity to explain why King, Karow, and Sussek should remain in the case.

But even if King, Karow, and Sussek aren't adequate representatives, that still leaves two other named plaintiffs with justiciable claims. Most of defendants' arguments related to adequacy are simply repeats of their arguments about commonality and typicality that the court has already considered. They raise one new argument, which is that the plaintiffs who were convicted of homicide (like Price and Heredia) cannot adequately represent the interests

of class members who were convicted of nonhomicide crimes. Defendants don't explain why, except to say that *Miller* and *Montgomery* apply only to juvenile offenders convicted of homicide. But *Graham* applies to juveniles convicted of nonhomicide crimes, and *Miller* was an extension of *Graham*, so it's not clear where the potential conflict lies. In any event, plaintiffs' theory of the case doesn't depend on differences in the class members' crimes, and defendants don't identify any defenses that are unique to either group. So the court finds that named plaintiffs Price and Heredia are adequate representatives.

### E.   Adequacy of class counsel

Rule 23(g)(1)(A) sets forth four factors that a court must consider before appointing class counsel: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case. The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

In this case, plaintiffs are represented by a prominent civil rights organization—the American Civil Liberties Union—as well as multiple law firms, including Quarles & Brady LLP and Foley and Lardner LLP. Collectively, plaintiffs' counsel have more than adequate resources and extensive litigation experience on class actions and prisoner civil rights issues. The court finds that counsel meet the requirements of Rule 23(g).

### F.   Class-wide injunctive relief and declaratory relief

Class certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Defendants don't discuss Rule 23(b)(2) in their opposition brief, which the court

construes as an implicit acknowledgement that plaintiffs have satisfied Rule 23(b)(2). The court finds that they have because all of the injunctive and declaratory relief that plaintiffs seek relates to the standard that defendants are applying to parole decisions, not to the individual circumstances of a particular prisoner being considered for parole. *See Chicago Teachers Union*, 797 F.3d at 441–42 (certification appropriate under 23(b)(2) when the plaintiffs "seek the same declaratory and injunctive relief for everyone").

## G. Class notice

"Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class." *Lewis v. City of Chicago, Illinois*, 702 F.3d 958, 962 (7th Cir. 2012). A court has discretion to issue notice, Fed. R. Civ. P. 23(c)(2), but neither side asks for notice in this case, and the court sees no need for it.

## H. Conclusion

Plaintiffs may face an uphill battle in showing that defendants' standard for evaluating parole decisions violates the Eighth Amendment, the Sixth Amendment, and the Due Process Clause. But the court is persuaded that plaintiffs' claims can be resolved collectively rather than one-by-one. So the court will grant plaintiffs' motion for class certification under Rule 23(b)(2).

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(2), Dkt. 28, is GRANTED.

2. The court certifies the following class: "All persons serving life sentences, or a term of at least 470 months, for crimes committed when they were children under the

age of 18 in the custody of Wisconsin DOC and who are now, or will be, eligible for release under parole supervision."

3. The court approves the following lawyers as class counsel: Avery Gilbert, Emma Smith Shakeshaft, Gregory T. Everts, Heather Holden Brooks, Issa Kohler-Hausmann, Laurence J. Dupuis, Martha Jahn Snyder, Patrick J. Proctor-Brown. R. Timothy Muth, Stephanie M. Moon, and Amy Lynn Lenz.

4. Plaintiffs may have until November 3, 2020, to show cause why Carlos King, Thaddeus Karow, and Craig Alan Sussek shouldn't be dismissed from the case.

Entered October 20, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge